GEORGE KOUKLY and Others, Plaintiffs, *v.* EDWARD CANAVAN, etc., Defendants.*

Supreme Court, Bronx County, January 10, 1935.

* See, also, *Koukly* v. *Weber* (154 Misc. 659).

*Harry Sacher*, for the plaintiffs.

*Henry A. Friedman* and *Marton M. Mandel* [*Seymour Mork* of counsel], for the defendant.

HAMMER, J. The plaintiffs, members of local 802, American Federation of Musicians, have been expelled therefrom for their failure to pay a fine of $300 imposed upon each of them by the governing board. They seek an order restraining the officers of the local from interfering with or depriving them of their rights as members thereof during the pendency of this action, which is

brought to annul said fines and expulsions and to compel their reinstatement as members. Each of the plaintiffs was charged with, tried for and found guilty of the violation of article IV, section 1, subdivisions " d," " n " and " q " of the by-laws of local 802, reading as follows:

" Section 1. It shall be considered a breach of faith and detrimental to the welfare of this Local for a member to commit any one or more of the following acts, all of which are hereby prohibited, viz.: * * *

" (d) To commit any act of bad faith or unfair dealing towards this Local or any of its officers or members, or the American Federation of Musicians, its Locals or the officers and members thereof, respecting the affairs and welfare of this Local or the American Federation of Musicians or any of its Locals, or respecting in general the welfare of the musical profession. * * *

" (n) To fail to comply with the instructions or orders of the Governing Board [of local 802]. * * *

" (q) To violate or fail to comply with, or to cause or induce or advise anyone else to violate or fail to comply with The Constitution, By-Laws, Standing Resolutions, Rules, Regulations, or Orders of The American Federation of Musicians."

The acts attributed to the plaintiffs were set forth in a specification reading as follows:

" That in violation of an order issued by the International Executive Board (of the American Federation of Musicians) under date of March 28, 1934, and in violation of an order issued by the Governing Board of Local 802, dated March 30, 1934, the plaintiffs in combination with others proceeded to bring about and conduct a so-called special meeting of members of Local 802, and at that time and place and subsequently committed acts in connection with and for the purpose of conducting and having take place such special meeting and a special election of officers and members of the Governing Board of Local 802.

" That the purpose and effect of the acts of the plaintiffs, in combination with the others, was to place obstacles in the way of the successful maintenance of Local 802 as a Local of the American Federation of Musicians."

The charges were preferred by James A. J. Canavan, sergeant-at-arms of the local, a brother of defendant Edward Canavan, chairman of the governing board of the local union and of the trial tribunal.

Claiming that they have exhausted their remedies within the organization, the plaintiffs appeal to this court for relief on the grounds:

(1) That no evidence of a violation by any of the plaintiffs of any of the by-laws of local 802 was adduced; and

(2) That the governing board, before whom the charges were tried and by whom the plaintiffs were found guilty, fined and expelled, were biased and prejudiced, and that plaintiffs did not have a fair trial.

Local 802 was chartered as an affiliated local union of the American Federation of Musicians in 1921, when it adopted articles of association and by-laws (Exhibit B), which but for minor amendments (Exhibit C) continue in full force and effect. These articles and by-laws provide that a governing board of thirteen, of whom a majority shall be and in fact were selected by the international executive board of the federation, shall manage the affairs of the local; that the chairman, secretary and treasurer of the local shall be appointed by the international executive board; and that the by-laws may be amended only by the governing board upon the consent and approval of the international executive board. (Exhibit A, p. 3, § 3; p. 7, art. I, § 1; p. 32, art. XI, § 1.) For years the members of local 802 besought the international executive board to amend the by-laws so as to place the selection of officers and the enactment and amendment of by-laws in the hands of the membership — rights enjoyed by the other 700 local unions affiliated with the federation — but the request was refused. The last refusal was on the ground that the international executive board was not convinced that the membership desired self-government. At a regular membership meeting of local 802 on February 5, 1934, a resolution was adopted " that a secret vote be held [same as at an election of the local] on March 12, 1934, to decide whether or not the membership of Local 802 demands full and absolute autonomy in order to govern its own affairs the same as all other locals in the A. F. of M. do." A referendum, as provided for in the resolution, was held under the direct supervision of the governing board of local 802 on March twelfth, when 3,855 members voted on the proposition, 3,728 voting in favor of full and absolute autonomy and 127 voting against it. On March nineteenth a resolution was unanimously adopted at a regular membership meeting of the local that a committee of eleven be elected to draft amended by-laws and report same to a special meeting of the members to be held on April second for action thereon; and that another committee of eleven, designated as a special election committee, be elected to conduct an election on April thirtieth of seven members of governing board, three of whom should be elected to the offices of chairman, secretary and treasurer of the local, in place of those appointed by the international executive

board. The following plaintiffs were among those elected to the by-law committee: Tabak, Feinberg, McCann, Sterne, Suber, Conrad and Feldman. The remaining plaintiffs, Koukly, Arons, Modiano, Conaway and Horn, were among those elected to the special election committee.

On March twenty-second several of the members of the by-law committee, among whom were five of the plaintiffs herein, appeared before the governing board. Tabak, as chairman of said committee, requested that the secretary of the local mail to the members thereof notice of the special meeting which was to be held on April second to receive and act on the by-law committee's report. The chairman informed Tabak that he had advised Weber, the president, and Kerngood, the secretary, of the federation of the results of the referendum held on March twelfth and of the adoption of the March nineteenth resolution, and that if the international executive board approved of the resolution he, as chairman, would comply with the request of the by-law committee, but if the executive board did not approve of the resolution, there would be no meeting on April second and no election on April thirtieth. Tabak then asked for the local's mailing list and the use of its facilities for sending notices of the meeting to the members. These were refused and he said " that the by-laws will be revised, a meeting will be held on April 2nd just the same, if not in this building then elsewhere."

Upon the charges two hearings were had before the governing board, one on April 7 and the other on April 14, 1934. At the April seventh hearing the charges were read and testimony was given by plaintiff Sterne and Sergeant-at-Arms Canavan.

The letter of March 28, 1934, by the federation secretary to the local's secretary, in evidence over plaintiff's objection, read in part: " This notice is given to avoid the commission of any error by the local and you are required to suspend any further steps for the amendment of your constitution or by-laws without the written consent of the Executive Board. You are notified that failure to comply with the foregoing or any violation in the foregoing respects may subject you to the revocation of the local charter by the Federation."

The letter of March 30, 1934, by the local to its members read in part: " The Governing Board, therefore, unanimously directs that no members' meeting be held on April 2, 1934; that no special election be held; that nothing shall be done by any member of this Local with a view of holding such meeting or such special election."

Copies of the letters of March twenty-eighth and March thirtieth were posted on the three bulletin boards of the local.

At the conclusion of the hearing of April seventh plaintiffs' counsel moved for dismissal of the charges on the ground, among others, that no evidence had been adduced in support thereof. The chairman, after consultation with the other members of the board, announced that the board had decided that decision on the charges "be held in abeyance and laid over." Plaintiffs received notice to appear for further hearing on April fourteenth, when the following witnesses were called on behalf of the complainant: Herman Chartoff, William N. Bartow and plaintiff Feinberg. Feinberg testified that, with the assistance of plaintiff Modiano, he prepared a notice or circular, referred to in the course of his testimony as Exhibit 2, inviting the members of the local to attend the Lyceum on April second. He and Modiano distributed copies thereof among some of the members. He was told of, but did not see, a notice on the bulletin board "to the effect that the special meeting to be held on April 2 was, according to that order, illegal and would not be held as per resolution." He understood the notice to be from the national board or from the local governing board. He made a statement "to the effect that that meeting across the way [i. e., at the Lyceum] would be held anyway." Feldman testified he "went across the street to the union [this building] and induced and spoke to members, telling them to come across to the Lyceum to the meeting, * * * and that the meeting is being held and that they should come across to the meeting."

In addition to the foregoing testimony, concessions were made by plaintiffs of the following: Modiano assisted Feinberg in the preparation of the notice or circular inviting members to attend the Lyceum. Modiano had same mimeographed. Feinberg, Feldman, Modiano and Sterne distributed copies thereof among some of the members of the local. All the plaintiffs knew of the distribution thereof and none of them objected thereto. (Exhibit IV, pp. 21, 22.) Complainant's counsel then asked whether plaintiff would "also concede that this letter of March 30, 1934, of the Governing Board, as well as the letter of March 28th from the Secretary of the American Federation of Musicians, was posted on the three bulletin boards of this local on the day that this meeting was held across the way;" and in reply plaintiff's counsel stated: "All the defendants are saying that they saw neither of the two letters posted, but the defendants [plaintiffs herein] will concede that at or prior to the gathering held on April 2, they had received from the Governing Board of Local 202, a copy of the letter dated March 30, 1934." (Exhibit IV, pp. 22, 23.)

This concluded the hearing of April fourteenth. The charges were thereupon amended, over plaintiff's objection, to read as hereinbefore set forth.

There are certain well-defined principles applicable to trade unions and their members. They constitute rules of guidance in the organization of such bodies, general and local, and in the preservation of a proper balance between them. Their observance tends to facilitate friendly relations between the members, officers and bodies, to establish justice, promote the general welfare, secure labor standards, and to accomplish the beneficent objects of their society. Their violation induces conflict and dissension within the organization and among its members, impairs confidence in leaders and the union, and an internal blow is struck at that collective strength, which has been built up through years of united purpose and action, and which by unceasing steadfast effort, has advanced the interests of the working classes. If such violation occurs in many unions, trade unionism itself may be weakened, and the common cause of labor injured. Many authorities either state or support these rules. (*United States* v. *Cruikshank,* 92 U. S. 542; *Polin* v. *Kaplan,* 257 N. Y. 277; *Bossert* v. *Dhuy,* 221 id. 342; *Wilcox* v. *Royal Arcanum,* 210 id. 370; *Burt* v. *Oneida Community,* 137 id. 346; *Mathews* v. *Associated Press,* 136 id. 333; *McCord* v. *Thompson-Starrett Co.,* 129 App. Div. 130; *Irwin* v. *Possehl,* 143 Misc. 855; *Musical Mutual Protective Union* v. *Weber,* 123 id. 182; *People ex rel. Meads* v. *Alpha Lodge,* 13 id. 677; *Hess* v. *Johnson,* 41 App. Div. 465; *Spayd* v. *Ringing Rock Lodge,* 270 Penn. St. 67; 113 A. 70.)

The determination or sentence of the tribunal of a voluntary association such as a union is conclusive, when it is found that the proceeding is in accordance with the association's rules and laws, conducted fairly, in good faith, and neither the proceeding nor anything of substance done in or by it violates the law of the land, and it appears that there was substantial evidence to sustain the charge. The public courts will not consider the weight of the evidence, nor under the circumstances just stated substitute the judgment of the court for that of the tribunal before which the member was tried. However, if the charge is not sustained by the rules and laws of the association or by any substantial evidence, or is prosecuted unfairly or in bad faith, or violates the law of the land, or it appears that the proceeding is contrary to natural justice, courts of equity will consider the appeal and render appropriate relief.

Substantial justice is the object to be sought rather than consideration of form or for the observance of technical judicial rules.

The terms "bad faith" and "unfair dealing" embrace and connote deceit, fraud, dishonesty, onesideness of intention or purpose.

In the absence of clear proof of *mala fides*, it will not be assumed. If acts are susceptible of two interpretations, that of innocence and not that of guilt must be assumed.

The charge of bad faith and unfair dealing must be considered in the light and surroundings of the facts and circumstances. The members of the local for years besought the international executive board to amend the by-laws so as to place the selection of the local's officials, including the governing board, seven of the thirteen members of which were appointed by the executive board, in the hands of the membership of the local. This was refused, the last time on the ground that the international executive board was not convinced that the membership desired self-government. The membership then, comprising and in reality being the local, felt required to give expression of their desire for self-government in a manner and by a method that would be unmistakably convincing to the executive board. They did this by the resolution of the regular meeting of the local on February 5, 1934, for the referendum on the subject to the entire membership, by the referendum of March twelfth and the overwhelming vote expressing that desire, by the resolution of the regular meeting of March nineteenth, for revision and amendment of by-laws, the appointment of a by-laws committee and an election committee, designating special meetings to be held for by-law committee report, nominations and special election of members to the seven places on the governing board filled by nomination of the executive board. The local did all these things. Plaintiffs were the instrumentalities through whom, in part, the expression of desire was being demonstrated. The membership, familiar with the by-laws, knew amendment could not be accomplished in that way; that the special meetings would be nullities, the committees ineffective, and the persons elected would have no warrant to function in the designated offices. The governing board knew this and regarded the action taken as a nullity. The plaintiffs knew this, and although they acted up to the point of election with zeal and enthusiasm, thereafter they did nothing to foist the pretended by-laws on the local or the governing board, to prevent the functioning of the regular officers or to impede the transaction of the business of the local in accordance with the sanctioned by-laws. It is not shown in the record here that the purported by-laws were adopted, or that the membership or even the plaintiffs undertook to act under them. The membership in demonstration of their desire for local autonomy

brought about a phantom *fait accompli* as the most likely method of convincing the executive board of that desire. While it is not in the trial record, defendants on argument and in brief indicated the thorough effectiveness of the demonstration in the statement that the convention of the federation in June, 1934, shortly after the acts of which complaint is made, granted local autonomy as to all members of the governing board except the chairman, the selection of whom was still retained.

As the local and its membership viewed it, the acts of the plaintiffs were not detrimental but on the contrary beneficial. The acts were not one-sided of intention or purpose. There may have been some thought of self-advancement but the intention and purpose was to accomplish the automony which the membership and the local sought. There was no deceit, fraud or dishonesty. The acts were done openly with the approval of the membership expressed in referendum and regular meetings of the local. The ardor of the governing board in issuing the purported enjoining order, in prosecution and trial of the plaintiffs, and the severity of the sentence does not seem to spring from any necessity for the protection of the interests of the local. Excusable irregularity by plaintiffs there may have been, although that also appears to have been the act of the membership and the local, but the proof does not, in my opinion, show any threat or injury to the local or wrongful violation of the by-laws, article IV, section 1, subdivisions d, n or q. The acts of the plaintiffs were not infamous nor were they such as tended to the injury or destruction of the union.

At the meeting of March nineteenth the chairman of the local advised the meeting " that any resolution acted upon or attempted at a meeting of the local must be reviewed by the International Executive Board and submitted by them for approval." If the resolution or any part of it was in contravention of the constitution and by-laws, it might be expected that the presiding officer would rule it or such part " out of order." He did not. The defendants argue that the resolution for amendment of by-laws, appointing committees or calling special elections, could not be considered at a regular meeting, as over 14,000 members had no notice or knowledge of the presentation of the resolution, and special meetings can only be called by the chairman in his discretion, or at the request, in writing, of 500 members of the local. (Const. & By-Laws, art. VIII, § 2.) They assert notice of such special meetings must specify the purposes and objects of the meeting and no other matters shall be presented (§ 4); and all meetings shall be confined to the purposes specified in the notice therefor. (§ 5.) It will be noted that a quorum of 500 is required at a meeting.

The resolution for committees, amendment of by-laws, and for special meetings adopted seems to negative the charge of *mala fides*. The defendant's argument lends support to the idea of futility or nullity of action at the purported special meetings rather than to the charge upon which the plaintiffs were tried.

The evidence does not show service prior to the meeting of April second upon plaintiffs or actual knowledge by any of them of the purported order of the executive board. It cannot with reason be held upon the evidence presented that the local's charter was in jeopardy or likely to be revoked by the federation. In addition the action of the membership and of the local referred to above together with the other evidence in the record seems to me to constitute a sufficient valid defense to the charge of failing to comply with the instructions and order of the governing board.

The specific factual charge is much more limited than defendant's claim as presented on argument, that plaintiffs violated or failed to comply with or caused or induced or advised any one else to violate or fail to comply with the constitution, by-laws and orders of the American Federation of Musicians. It is my opinion that there is no substantial evidence establishing that plaintiffs were guilty of the charges set forth in the specifications upon which they were tried.

The remaining ground urged for injunction is bias and prejudice of the members of the tribunal and unfair trial. The sergeant at arms of the local was complainant and a witness. He is a brother of the chairman. Defendants argue that since the chairman did not vote on the question of guilt or innocence of plaintiff and as the other twelve members of the governing board were unanimous in their decision of guilt, the plaintiffs were not prejudiced. The record shows the chairman during the trial ruled on every question raised and decided them in favor of the complainant. That he dominated the situation appears from the suggestion of a member of the board that " we shall confine ourselves to acts prior to the filing of these charges and not subsequent, anything that happened after that," the chairman's ruling to the contrary, and his reply, " If I made the wrong decision in regards to overruling that is in the record," and a member's rejoinder, " you are taking the responsibility of the full board." (Exhibit IV, p. 13.) The chairman, it seems, comes within the observation of VANN, J. (*People ex rel. Meads* v. *Alpha Lodge, supra*, at p. 687): " It may be that he has that judicial temperament that would enable him to do this, although his own brother was a complainant, but the presumption arising from common experience is to the contrary."

It is my opinion that to insure plaintiffs a fair trial under the circumstances required the complete elimination of Chairman Canavan from any participation in the taking of testimony, rulings, deliberations and decisions by the governing board. Here again there is no ruling that Chairman Canavan or any other member of the governing board is other than a fair and just man. The ruling is based upon the implication arising from the relationship. I agree with Judge VANN's opinion that "the common judgment of mankind is that a brother would not be impartial in such a contingency, no matter how hard he strove to do his duty."

Horace Greely in the *Tribune* of April 13, 1853, as reported in History of Typographical Union No. 6, page 622, among other things said: "Capital can wait — Labor cannot — but must earn or famish. Without organization, concert and mutual support, among those who live by selling their labor, its price will get lower and lower as naturally as water runs down hill." This should be an inspiration for workingmen and labor unions to hold close their ranks in these trying days of depression and labor difficulty. This and the knowledge of the present lack of employment and the low state of the funds of workers should be to union tribunals a guiding influence to leniency rather than severity in decision and sentence. The fine here imposed on each plaintiff was $300. Ordinarily courts cannot review the sentence of the union tribunal if it appears warranted by the by-laws. Without passing upon the question here it might in an appropriate case appear that the act committed was so trivial and the sentence imposed so harsh that the incongruity or oppression would shock conscience and require equitable action.

Defendants argue the temporary injunction sought should not be granted because, if granted, it would prevent the enforcement of another fine, later imposed, and since plaintiffs say they cannot pay this they will be unable to pay the other fine, for non-payment of which their membership would in any event be terminated. That position is untenable.

The application for injunction will be granted to the extent that during the pendency of this action the officers of local 802 of the American Federation of Musicians will be enjoined from interfering with or depriving plaintiffs of their rights as members for non-payment of the fine of $300 imposed upon each of the plaintiffs by the governing board of said local. Bond of plaintiffs fixed in the sum of $500.