Helen GULICKSON, as Administratrix of the Estate of Andrew Gulickson, Plaintiff,

v.

Roland FOREST, individually and as President, and Clarence Brink, individually and as Treasurer, and Salvatore Gangi, individually and as Vice President, and William Burnett, individually and as Recording Secretary of Local 1486, Brotherhood of Painters, Decorators and Paperhangers of America, Defendants.

No. 65–C–139.

United States District Court
E. D. New York.

June 18, 1968.

---

Burton H. Hall, New York City, for plaintiff; Ernest Fleischman, Stephen F. Gordon, New York City, of counsel.

Michael F. Dennis, Garden City, N. Y., for defendants.

## OPINION AND ORDER

WEINSTEIN, District Judge.

Alleging that he was denied procedural and substantive rights guaranteed to him by his Union Constitution and by section 101 of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 411) and that he was the victim of a conspiracy among his opponents in the Union, Andrew Gulickson brought this action against the named defendants individually and as officers of Local 1486, Brotherhood of Painters, Decorators and Paperhangers of America. He sought compensatory and punitive damages resulting from his removal from the offices of Business Representative and Delegate to the National Convention for the Local. Subsequently, Gulickson died and his widow was substituted as plaintiff.

The case was tried by this Court sitting without a jury. For the reasons given below, plaintiff is awarded compensatory damages.

Gulickson had been the Local's Business Representative for over twenty years. This paid position constituted his chief means of support. Early in 1964 he was attacked and severely beaten by unknown assailants after leaving a union meeting. Despite the injuries he suffered—two broken legs—he continued to function satisfactorily as Business Representative and to engage in union politics.

The supposed cause of Gulickson's removal from Union office was his conduct in the May 21, 1964 election for Delegate to the National Convention in which he was a candidate.

Notices were sent to the Local's membership announcing both a general meeting on May 14 and the May 21st election. At the general meeting on May 14 and at the Executive Committee meeting which preceded it, there was some doubt about whether an additional notice of the May 21st election should be mailed. The Executive Committee first decided to give notice and then rescinded its

decision. After debate at the general meeting, the membership adopted a resolution that there was to be no additional notice. Nonetheless, Gulickson mailed printed postcards to many members of the Local. The card read as follows:

### "BROTHERHOOD of PAINTERS, DECORATORS and PAPER-HANGERS of AMERICA
### Local Union 1486 of Suffolk County

Dear Sir & Brother:

Elections for delegates to the convention will be held on May 21, 1964 from 8 to 10 P.M. at the Professional Building, Commack Road, Commack.

Please Bring Your Due Book and Vote.

Fraternally yours,

ANDREW GULICKSEN [sic]
Business Representative"

---

On May 21, 1964, Gulickson was elected one of three Delegates to the National Convention. Among those defeated were the defendants Roland Forest and Salvatore Gangi.

On June 25, 1964, Gulickson was re-elected to the office of Business Representative after a heated campaign pitting him against the defendant Roland Forest. The individual defendants Clarence Brink, Salvatore Gangi and William Burnett supported Forest's candidacy. Shortly after this election, Charles Zierau, a member of the Local, filed charges against Gulickson for having mailed official postcards in disregard of the resolution not to do so.

Gulickson was served with a copy of the charges on July 9, 1964. They read as follows:

"performing acts in violation of the constitution of the Brotherhood which were detrimental to the interests of the members of Local 1486 and the Brotherhood in that on or about the 19th day of May, 1964 without authority and in violation and in contempt of the decision of the Executive Board and the Rank and File of the Local Union did send to certain members of Local Union 1486 a printed notice of

meeting (election of delegates) to national convention. This was also in violation of the provisions of Sec. 185-a, and had, without authority and in violation of the constitution, imprinted upon such unlawful notice, the official name and Title of the Local Union."

The Trial Board consisted of the Local's Executive Committee—the defendants Roland Forest, Salvatore Gangi, Clarence Brink and William Burnett, and one Herman Feldman. Appearing as requested, Gulickson made no objection to the charges or the nature of the Board.

A stenographic transcript of the hearing was made. It shows that the case against Gulickson consisted of the resolution of the Local that no further notices of the May 21 election were to be given, copies of the postcards Gulickson had sent, an invoice to the Local for the Gulickson mailing, and testimony that some members had not received the cards.

In his defense, Gulickson admitted sending the cards, but denied any intention to appropriate the Local's letterhead, to violate the resolution not to send out notices, or to mail exclusively to his friends. He explained that the printer placed the letterhead on the card

because he had previously done work for the union and assumed that the type should be set that way. Cards were not sent to all members because the printer did not have enough to fill the order. Gulickson stated that he purchased and mailed the cards at his own expense and that he did not believe this to be in violation of the resolution that the Local would not mail additional notices. He produced a letter from the printer to the Local indicating that the billing of the Union was "a clerical error," that "[t]he four-cent postals was paid for by Mr. Gulickson," and that the number of cards printed were "the amount we had on hand at that time."

On July 31, 1964, Gulickson received a letter informing him that he had "been found guilty as charged." The punishment decided upon by the four individual defendants—Herman Feldman dissenting—was that Gulickson was to be "removed as Business Representative of L. U. 1486 and barred from attending meetings for one year."

Without notice to Gulickson or to Herman Feldman, a member of the Board, the Local's Trial Board then met on August 19, 1964. It ruled that, inasmuch as Gulickson had been barred from attending meetings for a year, he was no longer a member in good standing and therefore could not represent the Local as Delegate to the National Convention. By telegram, Gulickson was informed of this decision and requested to surrender his credentials.

Gulickson appealed both decisions of the Trial Board. He appealed the decision of July 31, 1964 to the General Executive Board of the National Union by a "Notice of Appeal and Statement" dated August 7, 1964; on December 11, 1964, he was notified that his appeal was "not sustained." He appealed the discipline of August 14, 1964, by traveling to the National Convention and presenting his credentials; the Convention refused to seat him.

Having exhausted his internal remedies, Gulickson brought this action to recover his salary as Business Representative and expenses in making the trip to the Convention, to be reinstated as Business Representative with full membership rights, and for punitive damages. Gulickson's death in 1966 mooted the request for reinstatement.

## I. CLAIMS UNDER THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT

Plaintiff advances three claims for relief under the Labor-Management Reporting and Disclosure Act. None have been sustained.

■■ First, it is contended that the disciplinary proceedings violated paragraph 5 of subdivision (a) of section 101 of the Act. This provision states that a union member cannot be disciplined unless the fundamentals of procedural due process—specific written charges, opportunity to defend, and a full and fair hearing—are observed. It has been almost uniformly held that this provision—restricting the power of a union to summarily dismiss a member—does not apply to dismissal of elected or appointed union officials, such as Business Representatives and Delegates. Grand Lodge of International Ass'n of Machinists v. King, 335 F.2d 340 (9th Cir.), cert. denied, 379 U.S. 920, 85 S. Ct. 274, 13 L.Ed.2d 334 (1964); Airline Stewards and Stewardesses Ass'n v. Transport Workers Union, 334 F.2d 805, 808–809 (7th Cir.), cert. denied, 379 U.S. 972, 85 S.Ct. 648, 13 L.Ed.2d 563 (1965); Mamula v. Local 1211, United Steelworkers of America, 202 F. Supp. 348 (W.D.Pa.1962); Strauss v. International Brotherhood of Teamsters, etc., 179 F.Supp. 297 (E.D.Pa.1959) (business agent). Thus, Gulickson had no federal statutory right to safeguards insofar as he was being punished as Business Representative or Delegate.

Gulickson was, in a sense, also being tried as a member of the union. In fact, he was deprived of his right to attend union meetings for a year. But now, long after that year has expired and death has intervened, the gravamen of

this action involves status as an officer rather than as a member.

■ Plaintiff's second and weightier contention is that Gulickson was removed from office because he exercised the rights of free speech and assembly guaranteed to him by section 101(a) (1) and (2) of the Act. Section 609 (29 U.S.C. § 529) makes it unlawful to discipline a member for the exercise of these statutory rights. Proof that a union officer was dismissed because he exercised his rights under section 101 entitles him to relief under the Act. Salzhandler v. Caputo, 316 F.2d 445 (2d Cir. 1963) (removal of union officers enjoined and damages awarded); Grand Lodge of International Ass'n of Machinists v. King, 335 F.2d 340 (9th Cir.), cert. denied, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964) (summarizes legislative history). Cf. Kroner, Title I of the LMRDA: Some Problems of Legal Method and Mythology, 43 N.Y.U.L.Rev. 280 (1968) (discusses *Salzhandler* case at length).

In the instant case, Gulickson was not removed for exercising his freedom of speech. He was charged, not for what he said or wrote, but for his use of an official letterhead in a manner that was not only unauthorized, but specifically disapproved by the Local's membership. The right to use the Union letterhead was not necessary for Gulickson to notify the membership of the forthcoming election. His right to campaign freely would have been vindicated if he had sent notices on his personal letterhead.

■■ On the record before it, the Trial Board could have found that Gulickson did intend his postcard to mislead members into thinking it was official. While the evidence would have supported a contrary inference—that the use of the Union letterhead was accidental and that Gulickson had no intention to make his notice appear official—this Court has no authority to try that issue *de novo*.

■ Finally, plaintiff argues that Gulickson was disciplined for exercising his right to request the Local to send out campaign literature. 29 U.S.C. §

481(c) (right of candidate for union office to distribute "campaign literature"). This claim is without support in the record.

## II. RIGHTS UNDER UNION CONSTITUTION AND STATE LAW

■ Having jurisdiction of this case by virtue of the substantial federal questions raised under the Labor-Management Reporting and Disclosure Act, this Court can and should decide the material issues arising under state law. See, e. g., United Mine Workers v. Gibbs, 383 U.S. 715, 721–729, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Libutti v. Di Brizzi, 343 F.2d 460 (2d Cir. 1965); Allen v. International Alliance of Theatrical, Stage Employees etc., 338 F.2d 309, 314 (5th Cir. 1964).

■ Under New York law, the constitution of a labor union is treated as a contract between the union and its members. Polin v. Kaplan, 257 N.Y. 277, 177 N.E. 833 (1931) (damages awarded to union members wrongfully expelled). The contractual nature of the rights under the Union Constitution is especially clear in the case of a member who is a salaried union official, paid by the union and elected to his position pursuant to the provisions of the constitution. His election to a post whose duties are defined in the constitution amounts to an agreement that his employment will be governed by its terms. Maltese v. Dubinsky, 304 N.Y. 450, 108 N.E.2d 604 (1952). Removal in violation of the terms of this employment agreement is a breach of contract for which a union may be held liable.

Section 177 of the Constitution of the Brotherhood of Painters, Decorators and Paperhangers of America requires a "due trial" before removal. It provides:

"No officers or business representative of a local union may be removed, except after due trial in accordance with the Constitution upon charges preferred against him and except as otherwise provided in this Constitution."

Under the Union Constitution, "due trial" includes adequate notice (section 270); a Trial Board composed of members of the Executive Committee, none of whom is a "directly interested party," i. e., neither the charging party nor the party charged (sections 269(a), (b)); an opportunity to be heard and present witnesses; and the keeping of a stenographic record of the proceedings (section 272(a)).

■ In addition, higher judicially imposed standards to insure impartiality in union disciplinary proceedings have been read regularly into union charters by New York courts. See, e. g., Madden v. Atkins, 4 A.D.2d 1, 162 N.Y.S.2d 576, 592–593 (2d Dep't 1957), aff'd, 4 N.Y.2d 283, 174 N.Y.S.2d 633, 151 N.E.2d 73, 74 A.L.R.2d 772 (1958) (impartial union tribunal); Koukly v. Canavan, 154 Misc. 343, 277 N.Y.S. 28 (Sup.Ct.1935). See also Summers, The Law of Union Discipline: What the Courts Do in Fact, 70 Yale L.J. 175, 204–05 (1960) (collects New York cases). Chief Judge Fuld succinctly described New York policy when he noted that the quasi-public character of modern-day labor unions circumscribes their power to discipline their own members:

> "Labor organizations, given the power to act as exclusive bargaining agents, are quasi-public organizations and ancient dogma, which described them as voluntary associations with unfettered control over their membership rolls, must be revised in the light of the realities of present day industrial life. Membership in a union is, today, a matter which critically affects a person's ability to earn a living. It follows, therefore, that a labor organization may not arbitrarily exclude an employee from membership and that any discriminatory exclusion from such membership must be condemned and stricken under state law * * *." Phalen v. Theatrical Protective Union No. 1 etc., 22 N.Y.2d 34, 290 N.Y.S.2d 881, 890, 238 N.E.2d 295, 301 (1968).

The question posed in the present case is whether the union, in disciplining Gulickson, met the due process requirements imposed by its internal regulations and the New York courts.

■ The procedure by which Gulickson was removed as Delegate to the National Convention clearly violated the Union Constitution. The action was taken without charges being lodged, without notice, and without providing an opportunity to be heard. Cf. Koukly v. Weber, 154 Misc. 659, 277 N.Y.S. 39 (Sup.Ct. 1935) (new punishment by appellate board invalid).

■ The validity of the original disciplinary proceeding presents a more troublesome question, since here the union tribunal did adhere to the formal procedural requirements prescribed by its Constitution. However, as noted above, under New York law mere ritualistic compliance is not sufficient. See Bricklayers', Plasterers' & Stonemasons' Union v. Bowen, 183 N.Y.S. 855, 859 (Sup.Ct.1920), aff'd mem., 198 App.Div. 967, 189 N.Y.S. 938 (4th Dep't 1921) ("the law insures to every member of such an association a fair trial, not only in accordance with the constitution and by-laws of the association, but also with the demands of fair play"). Due process is not a condiment to make a raw deal appear more palatable.

■ In the present case, the circumstances surrounding Gulickson's hearing and punishment—including the general finding of guilt, the presence on the five-member Trial Board of four of his political opponents and the disproportionately severe sanctions imposed—indicate that he was not afforded a "due trial" within the meaning of the Union Constitution as it would be interpreted by New York courts. His removal as Business Representative and Delegate therefore constituted a breach by the union of his employment contract.

■ Gulickson was found guilty of having violated paragraphs (6), (15), and (16) of section 267 of the Union Constitution. Subsection (15) which deals with the actions of a local union —"so conducting its affairs by a local union or subordinate body"—is clearly inapplicable to Gulickson, an individual.

The remaining subsections, (6) and (16), contain extremely broad language—"neglect, inefficiency or incompetency in the performance of his duties," "Performing acts detrimental to * * * [the] interests of the Brotherhood," and "conduct * * * inconsistent with the duties, obligations and fealty of a member * * * [or] officer." Presumably, any trivial slip by a member or officer could be found to be a violation within the meaning of these catch-all clauses.

Particularly because the definition of the offenses is so broad, a court must be sensitive to any indication that the power to punish was exercised arbitrarily. Cf. Coleman v. O'Leary, 58 N.Y.S.2d 812, 817 (Sup.Ct.), appeal dismissed, 269 App.Div. 972, 58 N.Y.S.2d 358 (1st Dep't 1945) ("it is of paramount importance that in union affairs as elsewhere, all exercises of arbitrary power shall be excluded."). Findings of guilt on charges of a violation of numerous sections of a constitution—some of which are, as here, inapposite—are particularly suspect. Polin v. Kaplan, 257 N.Y. 277, 285, 177 N.E. 833 (1931) (one of two charges unfounded; expulsion on remaining charge improper); International Brotherhood of Boilermakers etc. v. Braswell, 388 F.2d 193, 198 (5th Cir. 1968); Barbour v. Sheet Metal Workers etc., 263 F.Supp. 724, 726–727 (E.D. Mich.1966) (punishment for two offenses, one of which was statutorily protected free speech, tainted the entire proceedings).

The Trial Board in the present case did not measure up to the standards of impartiality imposed on unions by New York law even though no member was a "directly interested party." See Madden v. Atkins, 4 A.D.2d 1, 162 N.Y.S.2d 576 (1958) ("a trial by impartial judges must be enforced by the court with particular zeal in a case such as this where the court's power to review is so circumscribed"); Koukly v. Canavan, 154 Misc. 343, 277 N.Y.S. 28 (Sup.Ct. 1935) (where chairman of trial board was brother of charging party, proceedings were invalid). The chairman was the defendant Roland Forest who had recently been defeated by Gulickson in a heated election campaign for Business Representative—the post from which Gulickson was removed. The members included Salvatore Gangi, who along with Forest had been defeated by Gulickson in the election for Delegate—the other office from which Gulickson was displaced. Also on the Trial Board were Clarence Brink and William Burnett, who had supported Forest for Business Representative. The only other member was Herman Feldman, who suggested that Gangi was "a party to the charges," and who did not agree to the extreme punishment meted out. A union like a "State may not entrust the determination of whether a man is innocent or guilty to a tribunal 'organized to convict.'" Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). See also Pickering v. Board of Education, 391 U.S. 563, 578, n. 2, 88 S.Ct. 1731, 20 L.Ed.2d 811 (Appendix) (1968).

The inability of the board to act impartially is revealed by the severity of its decision. Cf. Reilly v. Hogan, 32 N.Y.S.2d 864, 870 (Sup.Ct.), aff'd, 264 App.Div. 855, 36 N.Y.S.2d 423 (1942) ("that the extreme penalty was meted out to the plaintiff, adds weight to the suggestion that plaintiff was punished for his opposition to the regime, rather than for slandering the union."). For what was at most a minor and technical violation, Gulickson was stripped of his livelihood and barred from membership meetings for one year. Apparently not satisfied with the draconian penalties already exacted, the four members of the Trial Board, whose impartiality was already suspect, met and, in violation of Gulickson's rights to charges and an opportunity to be heard, displaced him as Delegate to the National Convention.

The incongruity of the punishment alone would support a finding of lack of compliance with the requirement of due trial under section 177 of the Union Constitution and New York law. See Reilly v. Hogan, supra, 32 N.Y. S.2d at 870 ("At any rate, the offense—

if any—occurring in the heat of an acrimonious campaign, does not seem to be substantial enough to warrant the plaintiff's expulsion."); Koukly v. Canavan, 154 Misc. 343, 277 N.Y.S. 28, 38 (Sup. Ct.1935) ("it might in an appropriate case appear that the act committed was so trivial and the sentence imposed so harsh that the incongruity or oppression would shock conscience and require equitable action"). See also Koukly v. Weber, 154 Misc. 659, 277 N.Y.S. 39 (Sup. Ct.1935). Implicit in the panoply of substantive and procedural guarantees afforded disciplined members by the Union Constitution and New York law is the goal of a fair and reasonable determination of charges. One of the elements of a fair and reasonable determination is the principle that the punishment fit the crime. In this case, that principle was clearly violated.

■■■ The fact that Gulickson exercised his right to appeal from the Trial Board's decisions and that they were upheld does not absolve the Local. Gulickson had a right to "due trial" at the local level. "A right to appeal to a higher level in the association's hierarchy * * * would not appear to be a generally satisfactory substitute for an unbiased original hearing." Note, Judicial Control of Actions of Private Associations, 76 Harv.L.Rev. 983, 1035 (1963).

■ Defendants contend that even if this Court should find that Gulickson was denied a fair hearing, plaintiff nonetheless is not entitled to any relief since Gulickson's voluntary appearance before the union tribunal constituted a waiver of his objections to its composition and partiality. The cases cited by defendants are not decisive; they merely hold that harmless error need not invalidate the proceeding of a voluntary association. See Matter of Koch, 257 N.Y. 318, 178 N.E. 545 (1931) (notice); People ex rel. Deverell v. Musical Mutual Protective Union, 118 N.Y. 101, 107, 23 N.E. 129 (1889) (failure to serve copy of charges); Williamson v. Randolph, 48 Misc. 96, 96 N.Y.S. 644 (Sup.Ct.1905) (same); cf. People ex rel. Brewster v. The "Old Guard", 87 App.Div. 478, 84 N.Y.S. 766 (1st Dep't 1903), aff'd, 178 N.Y. 576, 70 N.E. 1105 (1904) (follows *Deverell* with little discussion). Application of a rule of implied waiver to a situation like the one presented by the instant case would be particularly harsh and inappropriate. There was no reason for Gulickson to suspect at the outset of the Union proceedings that the penalty for a relatively minor transgression would be loss of livelihood.

■ Moreover, a waiver doctrine of the kind defendants would have us apply is contrary to both state and federal labor policy which encourage a union member to exhaust his internal remedies before resorting to the courts. See, e. g., Madden v. Atkins, 4 N.Y.2d 283, 174 N.Y.S.2d 633, 638, 151 N.E.2d 73 (1958) (dictum: union members must exhaust their remedies within the union unless attempt would be clearly futile); 29 U.S. C. § 411(a) (4). If defendants' position were adopted, a union member—usually a layman without legal counsel—would be faced with a Hobson's choice (assuming he was aware of his option and the consequences flowing from it) either to decline to participate in the union proceedings and run the risk that a court might subsequently find that he failed to exhaust his remedies or participate and then be thrown out of court on the ground that he waived his objections.

■ There is nothing in the record to suggest that, had Gulickson objected to the form of the tribunal, another trial body would have been constituted. A union may not, by relying on the doctrine of implied waiver, shift to a suspect the responsibility of providing a fair trial. The primary responsibility for affording the essentials of due process rests on the accusers, not the accused. Where necessary to insure due process, a union's constitution must be modified to assure fair tribunals.

## III. CONSPIRACY AND THE LIABILITY OF THE INDIVIDUAL DEFENDANTS

Plaintiff claims that the individual defendants are liable for conspiring to pro-

cure the wrongful discharge of Gulickson. The theory is that the members of the Trial Board committed the tort of inducing Local 1485 to breach its contract.

■ The general rule is that officers of a corporation are not liable for inducing it to breach a contract. Rothschild v. World-Wide Automobiles Corp., 24 A.D. 2d 861, 264 N.Y.S.2d 705 (1st Dep't 1965); Greyhound Corp. v. Commercial Cas. Ins. Co., 259 App.Div. 317, 19 N.Y.S. 2d 239 (1st Dep't 1940); Annot., Liability for Procuring Breach of Contract, 26 A.L.R.2d 1221, 1269–1271 (1952) (collects cases). This principle has been applied to members of a partnership. Braden v. Perkins, 174 Misc. 885, 22 N.Y.S. 2d 144 (Sup.Ct.1940). Its rationale is that officers of a corporation or members of a partnership must be free, when acting as agents within the scope of their authority, to recommend whatever action they deem best for their principal; since the principal would not be liable *in tort* for the breach of contract, neither should its agents. See Hicks v. Haight, 171 Misc. 151, 11 N.Y.S.2d 912, 916–917 (Sup.Ct.1939). Cf. Avins, Liability for Inducing A Corporation to Breach Its Contract, 43 Cornell L.Q. 55 (1957). This reasoning is applicable to the officers of an unincorporated association such as a labor union under the circumstances of the present case.

■ The privilege of agents to induce their principals to breach contracts is qualified; the agent must be acting in good faith within the scope of his authority. Navarro v. Fiorita, 271 App. Div. 62, 62 N.Y.S.2d 730 (1st Dep't 1946), aff'd, 296 N.Y. 783, 71 N.E.2d 468 (1947) (allegation that general manager converted merchandise for which salesman had filled orders stated cause of action against general manager); Buckley v. 112 Central Park South, Inc., 285 App.Div. 331, 136 N.Y.S.2d 233 (1st Dep't 1954) (allegation that officers of corporation conspired to appropriate plaintiff real estate broker's commission for themselves states a cause of action); Rendich v. Preferred Mut. Fire Ins. Co.,

274 App.Div. 800, 79 N.Y.S.2d 501 (2d Dep't 1948) (allegation that a corporate officer attempted to extort a private advantage from plaintiff and, upon failing to do so, induced the corporation, against its interests, to breach its contract with him states a cause of action). Cf. DeJetley Marks v. Greenwood, 1 All.Eng. 863, 871 [K.B.1936] (denying relief but suggesting that a conspiracy among some directors to breach an employment contract could exist).

■ Defendants were acting within the scope of their authority in sitting as a Trial Board. The evidence supporting the finding that the Trial Board did not give Gulickson a "due trial" within the meaning of the Union Constitution, as it must be interpreted under New York law, falls short of proof that the members of the board acted in bad faith, for their own gain, or against the interests of the union. The finding of partiality is not based upon the theory that individual members were acting with personal animus against Gulickson, but upon the conclusion that their relationship to him was such as to render them unable to judge the matter objectively. Cf. Koukly v. Canavan, 154 Misc. 343, 277 N.Y.S. 28, 38 (Sup.Ct.1935) (chairman of trial board was brother of charging party; discipline held improper; the court stating "there is no ruling that Chairman Canavan or any other member of the governing board is other than a fair and just man. The ruling is based on the implication arising from the relationship."); Dession, The New Federal Rules of Criminal Procedure, II, 56 Yale L.J. 197, 245 (1947) ("common experience the uncommonly prejudiced individuals almost invariably consider themselves impartial").

■ Similarly, the finding that the penalties imposed were overly severe, does not encompass a finding that the members of the Trial Board acted in bad faith. Given the conclusion that there was no animus against Gulickson, the fact that members of the Trial Board were his political opponents tends to disprove the charge that they were acting

against the interests of the union. As men who had recently opposed Gulickson for the office from which he was removed, they undoubtedly were convinced that others could do a better job than he. The motive for displacing him may well have been the desire to have a younger, more energetic representative for the Local than Gulickson, then a near cripple.

There is no proof of any self-interest in the record—none of the members of the Trial Board replaced Gulickson as Business Representative. There is no indication of a sinister "takeover" of the union by the "Forest faction." Under the circumstances, the actions of the individual Trial Board members fit well within the bounds of immunity of agents for inducing the principal's breach of contract. The individual defendants are not liable for the Local's breach.

## IV. LIABILITY OF UNION

New York law allows a recovery against a union for wrongful exercise of disciplinary power by its officials in the course of their duties. See, e. g., Polin v. Kaplan, 257 N.Y. 277, 177 N.E. 833 (1931); Blek v. Wilson, 262 N.Y. 253, 186 N.E. 692 (1935). As Judge Fuld, summarizing New York law on the problem of union liability for its agents' conduct, recently put it:

> "It is certainly not too much to expect that a labor union should not deprive its members of their jobs * * * without proof fairly raised and fairly heard of substantial wrongdoing. Nor * * * is it too much to require the union to assume responsibility for the wrongful expulsion of a member by a number less than all when the membership has expressly provided for such a delegation of disciplinary power. By sanctioning the delegation of authority, the membership subjects the funds of the union to liability for the abuse of such power by those entrusted with it." Madden v. Atkins, 4 N.Y.2d 283, 296, 174 N.Y.S.2d 633, 642–643, 151 N.E.2d 73, 80 (1958).

See also Coleman v. O'Leary, 58 N.Y.S.2d 812, 817 (Sup.Ct.), appeal dismissed, 269 App.Div. 972, 58 N.Y.S.2d 358 (1st Dep't 1945) ("The entire union membership should be held liable for the damages resulting from wrongful expulsion ordered by officers and agents of their own choosing"); Note, Judicial Control of Actions of Private Associations, 76 Harv.L. Rev. 983, 1096 (1963) ("The proliferation of large private associations makes desirable a concept of group liability limited primarily to the common fund").

Gulickson was disciplined by the Executive Committee to whom the membership had entrusted power to hear and determine charges. Although the membership did not retain the power to approve the action of the Trial Board, it cannot thereby insulate itself from liability. Under *Madden* v. *Atkins*, such delegation itself constitutes a sufficient basis for holding the union liable. Moreover, the fact that Gulickson was the Business Representative, known to all members of the eight-hundred-man Local, indicates a degree of acquiescence on the part of the membership sufficient to be characterized as ratification by the membership. Martin v. Curran, 303 N.Y. 276, 101 N.E.2d 683 (1961); Browne v. Hibbets, 290 N.Y. 459, 467, 49 N.E.2d 713 (1943); Summers, Legal Limitations on Union Discipline, 64 Harv.L.Rev. 1049, 1096 (1951). The union is liable in damages.

## V. AMOUNT OF DAMAGES

For breach of the contract of employment, plaintiff is entitled to the full amount of the salary Gulickson would have received in the period between the date his salary was terminated, August 1, 1964, and the date he died, March 14, 1966, less the amount of any compensation award he received in the interim. The evidence establishes that, despite the severe injuries he received in the course of his employment, had it not been for his wrongful discharge, he would have continued to serve as Business Representative. It is also clear that because of his injuries, Gulickson was

not otherwise employable and hence could not have mitigated damages.

The expenses incurred by Gulickson in making the trip to the National Convention are a direct result of the union's improper removal of him. Cf. International Brotherhood of Boilermakers etc. v. Rafferty, 348 F.2d 307, 315 (9th Cir. 1965). They are recoverable in this action.

Settle judgment on ten days notice.

So ordered.