Burke, J.
On this appeal we are called upon to consider two problems, first, our jurisdiction, in the face of a claim of Federal pre-emption, to afford relief to working people who have been unfairly and discriminatorily treated by a labor union which is their exclusive bargaining agent with their employer, and, second, what remedies, assuming we have jurisdiction to afford any relief at all, are available to such aggrieved employees.
Petitioners-appellants in this article 78 proceeding, seeking an order in the nature of mandamus directing respondent Theatrical Protective Union No. 1, the sole bargaining agent for stage hands and stage maintenance men in New York and Bronx Counties, to admit them to membership in respondent, *37 have brought charges against this union which, if true, would be violative of law. Petitioners allege in their petition that for many years past each of them has been employed either as a stage hand or stage maintenance man at theatres within this union’s jurisdiction. They are not members of the union, and as a result of such nonmembership, according to their petition, they have had difficulty in obtaining employment and have at the instance of respondent been summarily dismissed from jobs they have succeeded in obtaining and have been replaced in these jobs by union members. Petitioners Phalen and Amador claim further that, as a result of the union’s actions in having them discharged and replaced by union members, their earnings for 1965 from employers contributing to the pension fund maintained by the union fell below $4,000, the amount required to maintain eligibility in the pension plan. Petitioners also complain that they were required by the union to pay 4% of their earnings to the union. These payments, they assert, went into a union fund which benefited only members of the union. Petitioners claim to have made repeated applications for membership in the respondent union, all to no avail. In his supporting affidavit petitioner Phalen charges that union membership may be obtained only through being proposed by a member of the union and that petitioners are unable to obtain such sponsorship, as this is ‘‘ generally exercised in favor of sons or relatives [of members].”
At Special Term of the Supreme Court, Bronx County, the petitioners, relying on their petition and supporting affidavits, moved for an order directing respondent to admit them to membership, and the union cross-moved to dismiss' their petition, on the grounds that (1) there was no authority for such a proceeding, (2) the court was without jurisdiction to entertain it, (3) the petition did not state facts sufficient to entitle petitioners to the relief sought, and (4) the proceeding was untimely under CPLE 217 (which latter contention is not pressed on this appeal). Special Term denied the cross motion of respondent and, despite its recognition that its action was unprecedented in this State, granted petitioners’ motion unless the respondent should serve and file an answer to the petition within 10 days. No answer was filed and an order directing respondent to admit petitioners to membership was entered against respondent.
*38 On appeal to the Appellate Division, First Department, that court, with .two Justices dissenting on the opinion of Special Term, reversed and granted respondent’s cross motion to dismiss the petition, on the ground that, ‘ ‘ according to an unbroken line of precedents * * * in this State ” “ [i]n the absence of a violation of a statutory duty, an article 78 proceeding for mandamus does not lie.” As a further ground of decision the court also pointed out that petitioners ’ grievances were ‘ ‘ arguably within the ambit of the National Labor Relations Act,” indicating, apparently, the court’s view that under the doctrine of Federal pre-emption as enunciated in San Diego Unions v. Garmon (359 U. S. 236) this controversy was within the exclusive jurisdiction of the National Labor Relations Board (NLRB). .
We are in agreement with the majority below that mandamus will not lie under the circumstances of this case, but we are also of the opinion that our courts are not ousted of jurisdiction over the present controversy under the Federal pre-emption doctrine and that, while petitioners were not entitled to bring their action in the form in which it was brought or to the relief requested, they did on their pleadings and proof, if unanswered, make out a case for injunctive relief of a lesser order and, .therefore, their petition should not have been dismissed, but, rather, an order ¡should have been entered allowing them to proceed with their action in the form of an ordinary action in equity.
I
Turning first to the argument that, because petitioners’ grievances are “ arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as .the federal courts must defer to the exclusive competence of the National Labor Relations Board ” (see San Diego Unions v. Garmon, supra, p. 245), we are of the opinion that under the recent decisions of the United States Supreme Court in Vaca v. Sipes (386 U. S. 171) and Mangus v. A. C. E. Freight, Inc. (386 U. S. 482, decided in a brief Per Gwiam opinion under the authority of Vaca v. Sipes but reported below at 6 Ohio App. 2d 87 [Ct. of App. of Ohio]), considerably limiting Garmon’s seemingly absolute ban on courts’ exercising jurisdiction over controver *39 síes “ arguably subject to § 7 or § 8 of the Act ” (see, especially, Mr. Justice White’s opinion for the court in Vaca v. Sipes, supra, p. 179, and Mr. Justice Fortas’ concurring opn., p. 199), our courts may exercise jurisdiction over the instant controversy. • As we read this petition it charges the respondent labor union with violation of its Federal statutory obligation under the National Labor Relations Act “ to serve the interests of all members [of bargaining units for which it is exclusive bargaining agent] without hostility or discrimination toward any ” (Vaca v. Sipes, supra, p. 177). In a series of decisions going back over many years the United States Supreme Court has recognized this duty of unions and the right of employees to obtain enforcement of the union’s obligation of fair representation in the courts (see authorities cited in Vaca v. Sipes, supra, p. 177), and in Vaca v. Sipes we are told that, just because the NLRB belatedly recognized that unfair representation could be interpreted as an unfair labor practice in violation of section 8 (subd. [b]) of the act (see Miranda Fuel Co., 140 N. L. R. B. 181 [1962]), the courts are not ousted of their jurisdiction in this field. In line with Vaca v. Sipes, .the reasoning of which we believe is applicable here, we are of the opinion that our courts have jurisdiction to entertain this action.
II
A finding that our courts may exercise jurisdiction over the instant controversy does not, of course, mean that petitioners were entitled to the relief requested or to prosecute their action in the form in which it was brought. The relief sought here is, as both courts below have recognized, unprecedented in this State, and, while we would be prepared, despite this, upon proper pleadings and proof to uphold an order compelling a labor union to accept into membership members of a bargaining unit represented exclusively by that union, where such relief was the only means by which unfairly represented employees could be assured of nondiscriminatory representation, petitioners have not made such a showing. In addition, we are also of the opinion .that, even if petitioners were entitled to an order directing the respondent to admit them to membership, the extraordinary remedy of mandamus is not the proper means by *40 which such relief should be sought, and, on this latter point, we would only note that unincorporated labor unions are not the sort of bodies against whom mandamus traditionally lies (see People ex rel. Solomon v. Brotherhood of Painters, 218 N. Y. 115; see, also, 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7802.01) and, as the very same relief could be obtained in an ordinary action in equity for a mandatory injunction directing respondent to admit petitioners to membership* there is no need to consider broadening the traditional scope of the writ of mandamus to include this type of situation (cf. People ex rel. Solomon v. Brotherhood of Painters, supra, p. 122; see, also, Matter of Coombs v. Edwards, 280 N. Y. 361, 364).
The gravamen of the instant petition and of the affidavits submitted in support of it is not that petitioners are per se injured through nonmembership in respondent or that they would not be perfectly satisfied to work under the collective bargaining agreements negotiated with the various theatres by respondent, if only they could be assured of equal opportunity for work, but that they have suffered economic injury through the illegal acts of the union in persuading employers to discriminate against them and in exacting tribute from them. These are unquestionably serious grievances but, as far as appears from this record, they might well be remedied through an action in equity in which the court could enjoin the continuance of such conduct and award incidental damages for past injuries. Under these circumstances the drastic remedy of compelling respondent to admit petitioners to membership, a measure at variance with the announced legislative policy of this State, which provides, with only limited exceptions (see Civil Rights Law, § 43; see, also, Gaynor v. Rockefeller, 15 N Y 2d *41 120, 132-133), that labor organizations should enjoy “ full freedom of association ” (see Labor Law, § 700), seems uncalled for. It may, of course, develop that a court could properly find that a particular labor organization had, through a course of conduct evidencing flagrant and persistent disregard for the rights and interests of nonmembers represented by it, forfeited any legitimate claim to the right to continue to restrict its membership. But no such showing has been made here, and without such a showing we are unprepared, in the absence of legislation on the order of section 43 of our Civil Rights Law, which bars denial of membership in labor organizations on grounds of race, creed, color or national origin, to hold that labor organizations must open their membership .to persons whom they would rather not admit to their company.
Ill
Our determination that petitioners have prosecuted their action in an improper form and requested relief to which they are not entitled does not, however, serve to put them out of court. The improper form in which their action has been brought and their failure to request the appropriate relief is not a bar to their receiving whatever relief they may be entitled to. CPLR 103 (subd. [c]) provides that once a court has obtained jurisdiction over the parties in a “ civil judicial proceeding ” the proceeding “ shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution”, and CPLR 105 (subd. [d]), which defines “civil judicial proceeding ”, is clearly broad enough to include the instant proceeding, defining a “ civil judicial proceeding ” as a “ prosecution, other than a criminal action, of an independent application to a court for relief.” Similarly, CPLR 3017 (subd. [a]) provides, in part, that a court ‘ ‘ may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded ’ ’. Accordingly, the order appealed from should be reversed and the case remanded to Special Term so that an order may be entered allowing its proper prosecution.
Upon the proceedings had following remand we believe it would be best if the parties would develop the fullest possible *42 record, and this would undoubtedly be aided if petitioners were to plead over or otherwise expand upon the allegations contained in the present petition and supporting affidavits. A fully, developed record will be of inestimable value to Special Term in moulding whatever remedy or remedies it should deem necessary and to any reviewing court, should there be occasion for another appeal. Special Term is fully competent to devise an adequate and proportionate remedy for petitioners should their charges of discrimination be sustained (cf. State Comm, for Human Rights v. Farrell, 43 Misc 2d 958) and for this reason we refrain from suggesting at this point what specific remedies ought to be afforded petitioners, preferring instead to leave these matters for determination in the first instance to Special Term.
The order appealed from should be reversed and the case remanded to Special Term, Bronx County, with directions that an order be entered allowing petitioners to prosecute this action as if it had been commenced as a plenary action seeking whatever relief might be appropriate, including injunctive relief.
Chief Judge Fuld (concurring).
I agree with Judge Burke for reversal but I cannot accept the assumption—which seems, in part, to underly his reasoning—that labor organizations “ enjoy ‘ full freedom of association ’ ” and are under no duty to open their membership “ to persons whom they would rather not admit to their company ”, except in certain extraordinary, but undefined, circumstances (opinion, p. 41). Nor am I able to subscribe to the suggestion (opinion, pp. 39-40) that an aggrieved individual will have adequate relief if, in an action against the union for breach of its duty of fair representation, the court merely enjoins continuance of discriminatory conduct in .the future and awards damages stemming from past discrimination. For these reasons, I am impelled to write a separate opinion.
It is my view that, if a labor organization arbitrarily refuses to admit to membership persons, otherwise fully qualified by experience and ability, .they are entitled, in a case not covered by section 43 of the Civil Bights Law, to an order or injunction *43 directing the union to admit them to membership.[1] On a motion to dismiss a pleading, be it complaint or petition, we read the allegations most favorably to the pleader (see, e.g., Kober v. Kober, 16 N Y 2d 191, 193-194; Condon v. Associated Hosp. Serv., 287 N. Y. 411, 414) and, so read, the allegations in the challenged pleading are sufficient to make out a cause of action entitling the petitioners to such an order.
National labor policy has been built on the premise that a majority labor organization is the most effective vehicle for obtaining improvements in wages, hours and working conditions. Consequently, it has been said, that policy ‘ ‘ extinguishes the individual employee’s power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees.” (NLRB v. Allis-Chalmers Mfg. Co., 388 U. S. 175, 180.) The importance of the union in the economic life of the employee today cannot be overemphasized and, accordingly, its authority to act as exclusive representative is subject to the concomitant obligation to represent all members of the bargaining unit ‘ ‘ without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.” (Vaca v. Sipes, 386 U. S. 171, 177; Humphrey v. Moore, 375 U. S. 335, 342.) A union which breaches its statutory mandate to represent all employees fairly and without discrimination is subject to an action for damages and an injunction to prohibit the continuance of the discriminatory conduct. (See Steele v. L. & N. R. Co., 323 U. S. 192, 207; Tunstall v. Brotherhood, 323 U. S. 210; Syres v. Oil Workers Int. Union, 350 U. S. 892.)
The Supreme Court, in the Steele case (323 U. S. 192, supra), declared that the Railway Labor Act imposed on the union a duty, ‘ ‘ in collective bargaining and in making contracts with *44 the carrier, to represent non-union or minority union members of the craft without hostile discrimination, fairly, impartially, and in good faith” (323 U. S., at p. 204).[2] And, in ensuing years, the courts have applied the doctrine to cases involving racial (see, e.g., Conley v. Gibson. 355 U. S. 41; Railroad Trainmen v. Howard, 343 U. S. 768), as well as nonracial (see, e.g., Vaca v. Sipes, 386 U. S. 171, supra; Humphrey v. Moore, 375 U. S. 335, supra; Ford Motor Co. v. Huffman, 345 U. S. 330), discrimination.
However, an action for breach of the duty of fair representation by one who has been discriminated against, although it may afford him an important remedy, is no substitute for democratic participation in the affairs of the union. Unless an individual is a member of the union, he can have no voice in the selection of its officers who are his representatives in the collective bargaining process. Nor can he, if a nonmember of the union, express his approval or disapproval of the terms of the collective bargaining agreement, which most vitally affects every day of his working life, embodying as it does the wages and terms and conditions under which he is to work. Again, as a nonmember, an employee will have no say (within the union) as to questions pertaining to grievances arising under the collective bargaining agreement even though the interpretation and enforcement of the agreement may have a most serious impact upon him.
Furthermore, a union is free to take positions between sets of conflicting employees represented by it and is allowed a wide range of reasonableness in serving the unit it represents so long as it acts in good faith. (See Humphrey v. Moore, 375 U. S. 335, 349, supra; Ford Motor Co. v. Huffman, 345 U. S. 330, 338, supra; Vaca v. Sipes, 386 U. S. 171, supra.) The line of demarcation between the reasonable exercise of discretion and arbitrary abuse of power is often shadowy, and membership in the union of all qualified workers will furnish at least mini *45 mum assurance that the statutory bargaining agent has acted in good faith and in a nonarbitrary manner. A union official might well think twice before discriminating against a worker, or a class of workers, if those discriminated against might, as members of the union, prevent his re-election.
Labor organizations, given the power .to act as exclusive bargaining agents, are quasi-public organizations and ancient dogma, which described them as voluntary associations with unfettered control over their membership rolls, must be revised in the light of the realities of present-day industrial life. Membership in a union is, today, a matter which critically affects a person’s ability to earn a living. It follows, therefore, that a labor organization may not arbitrarily exclude an employee from membership and that any discriminatory exclusion from such membership must be condemned and stricken under state law (see Note, 59 Col. L. Rev. 190,. 199-200).
These views are not in conflict with what the court said in Gaynor v. Rockefeller (15 N Y 2d 120). We there held that the courts will not, at least in the first instance, issue an injunction mandating a labor organization to admit to membership persons excluded because of race, creed, color or national origin. But that conclusion was dictated, in large part, by the fact that in that case the plaintiffs against whom racial discrimination was being practiced were given a full and adequate remedy by resort to the State Commission for Human Rights (Civil Rights Law, § 43). In the case before us, however, no such relief is available to the petitioners and, consequently, if there is to be redress, it must be by way of a judicial proceeding. The Legislature did not consider whether the arbitrary exclusion of an employee for any reason other than race, color, creed or national origin requires the specially flexible and sensitive procedures available to the Commission for Human Rights (Executive Law, § 297, subd. 2). But, certainly, designation of that commission to deal with racial and religious discrimination did not take from the courts the broad powers vested in them to grant to parties aggrieved by wrongful conduct such relief as the situation demands.
It is true that the petitioners, by applying to the National Labor Relations Board or by bringing a Steele-type action, could have obtained an injunction against the union, forbidding continuation of their discriminatory conduct, as well as damages *46 suffered by them (National Labor Relations Act, § 8, subd. [b], par. [2]; see, e.g., Steele v. L. & N. R. Co., 323 U. S. 192, supra). But the National Labor Relations Board is powerless to order that they be admitted to membership (infra, p. 47), and an injunction which merely enjoined the union from continuing its wrongful conduct would be utterly inadequate and incomplete relief. Lawsuits and injunctions are no substitute for the processes of democracy. Nothing less than membership in the union can give the petitioners — assuming they prove their allegations— their rightful opportunity to participate, however indirectly, in the making of decisions which affect them so materially. Nor will a court injunction against discriminatory conduct enable them, in seeking jobs, truthfully to represent to prospective employers that they are members of the union having jurisdiction over the work involved — a representation which, as a practical matter, may be an indispensable prerequisite to obtaining employment.
This does not, of course, mean that a union must open its doors to felons (see Sovern, Legal Restraints on Racial Discrimination in Employment, ch. 6, p. 152, n. 43), to persons not qualified to perform the work of the bargaining unit or to persons who for any reason have undertaken to destroy the union.[3] It does mean, though, that the union must admit all workers to membership without discrimination and that if, in bad faith or arbitrarily, it rejects an applicant, it may be compelled by order of the court—or in the case of racial discrimination by direction of the Human Rights Commission — to admit him to membership.
On the question of Federal pre-emption, I would say but a few words. Although I agree with Judge Burke that the present action is not federally pre-empted, I hesitate to place sole reliance, as he has, on Vaca v. Sipes (386 U. S. 171, supra), in view of the very restricted meaning which had been given that decision by knowledgeable commentators. (See, e.g., Lewis, Fair Representation in Grievance Administration: Vaca v. Sipes, 1967 Supreme Court Review 81, 99.) My reason for concluding that there is no Federal pre-emption in this case is *47 very simple: the National Labor Relations Board does not have the power to direct a labor union to admit a worker to membership.
Section 8 (b), (1), (A), which makes it an unfair labor practice for a union to restrain or coerce employees in their right to engage or refrain from engaging in collective activities, adds the proviso “ [t]hat this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein ”. (See, e.g., NLRB v. Allis-Chalmers Mfg. Co., 388 U. S. 175,184,186, supra.) The Supreme Court, construing that proviso, held, in Machinists v. Gonzales (356 U. S. 617), that a state court was not precluded', by virtue of the pre-emption doctrine, from restoring to membership a union member who had been wrongfully ousted from the union and that the state had the power to award consequential damages even though those damages might be for conduct which constituted an unfair labor practice. (See, also, Plumbers’ Union v. Borden, 373 U. S. 690, 696-697.) In the course of its opinion, the court declared that “ to preclude a state court from exerting its traditional jurisdiction to determine and enforce the rights of union membership would in many cases leave an unjustly ousted member without remedy for the restoration of his important union rights. Such a drastic result, on the remote possibility of some entanglement with the Board’s enforcement of the national policy, would require a more compelling indication of congressional will than can be found in the interstices of the Taft-Hartley Act ” (356 U. S., at p. 620).[4]
Thus, it is indisputable that the National Labor Relations Board lacks the power to regulate admission of workers to union membership, and an order issued by a state court requiring a union to grant membership to a worker would not conflict with any board remedy. It is hardly necessary to add that there is *48 no perceivable difference, in the present context, between restoring to membership an employee wrongfully ousted and admitting one who has been wrongfully excluded from such membership. The injustice suffered by the worker in either case is precisely the same.
In sum, the petition sufficiently alleges that the respondent union violated the petitioners’ right to be considered for membership on the basis of fair standards, fairly applied. If, following interposition of an answer by the respondent and a hearing at Special Term, the petitioners’ allegations are proven, they are entitled to an order requiring the respondent to admit them to membership and to such other additional relief as may be appropriate.[5]
Accordingly, I would reverse the order of the Appellate Division, reinstate Special Term’s order denying the respondent’s cross motion to dismiss the petition and remit the matter to Special Term for further proceedings in accordance with the views I have expressed.
Judges Scileppi, Bergan, Keating, Breitel and Jasen concur with Judge Burke ; Chief Judge Fulp concurs in a separate opinion in which Judges Bergan and Jasen concur.
Order reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.

 While the instant controversy would appear to come within the literal terms of the very broad definition of “labor dispute” found in subdivision 10 of section 807 of our Labor Law and, therefore, to be subject to section 807’s limitations upon our courts’ issuing injunctions in such disputes, the longstanding construction placed upon section 807 is that it has no applicability where the subject of the activity sought to be enjoined is unlawful (see, e.g., American Guild of Musical Artists v. Petrillo, 286 N. Y. 226, 231; Goodwins, Inc. v. Hagedorn, 303 N. Y. 300, 305; Incres S. S. Co. v. International Mar. Workers Union, 10 N Y 2d 218, dissenting opn., p. 231), and this is certainly the nature of the union activities here alleged.

. The requirements of section 807 of the Labor Law have no application to a proceeding by an employee against a labor organization to admit him to membership. Section 807 —derived from section 876-a of the Civil Practice Act (the little Norris-LaGruardia Act) —is simply designed to prevent the issuance of injunctions, principally on the application of employers, in labor disputes, a term so defined in subdivision 10 (par. [c]) of the statute as to clearly exclude controversies between a union and its members or potential members. (See, e.g., Wolchok v. Kovenetsky, 274 App. Div. 282, 284; Caliendo v. McFarland, 13 Misc 2d 183.)

. On the same day on which it decided Steele (323 U. S. 192, supra), the Supreme Court also interpreted the National Labor Relations Act to require fair representation, saying that a union, as the agent of all the employees, was “ charged with the responsibility of representing their interests fairly and impartially.” (Wallace Corp. v. Labor Bd., 323 U. S. 248, 255; see, also, Ford Motor Co. v. Huffman, 345 U. S. 330; Syres v. Oil Workers Int. Union, 350 U. S. 892, supra; Humphrey v. Moore, 375 U. S. 335, supra.)

. In Tawas Tube Prods. (151 N. L. R. B. 46, 48), the board held that a union did not violate section 8 (b), (1), (A) because of its expulsion of members who had filed a decertification petition since the proviso to section 8 (b), (1), (A) “ would necessarily allow a union to expel members who attack the very existence of the union as an institution.”

. In 1963, five years after Gonzales, the court summarized its holding in that case in these words (Plumbers’ Union v. Borden, 373 U. S. 690, 696-697, supra): “It was recognized in that ease [Gonzales, 356 U. S. 617] that restoration of union membership was a remedy that the Board could not accord and indeed that the internal affairs of unions were not in themselves a matter within the Board’s competence. The Court then went on to hold that, in the presence of admitted state jurisdiction to order restoration of membership, the State was not without power ‘to fill out this remedy’ by an award of consequential damages, even though these damages might be for conduct that constituted an unfair labor practice under federal law.”

. Even though the petitioners may have requested relief to which they are not entitled, CPLR 3017 (subd. [a]) provides—as Judge Burke observed in his opinion (p. 41) — that “ the court may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded”, (See, also, 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 401.03, pp. 4-7, where it is said, “ Under the new practice there is no ‘procedural no-man’s land’”.)