**DISTRICT COUNCIL NO. 9, Plaintiff,**

v.

**EMPIRE STATE REGIONAL COUNCIL OF CARPENTERS, et al., Defendants.**

**No. 06 Civ. 6557(BMC)(JMA).**

United States District Court,
E.D. New York.

Sept. 26, 2007.

Howard Gary Wien, Koehler & Isaacs, LLP, New York, NY, for Plaintiff.

Robert T. McGovern, Meyer, Suozzi, English & Klein, P.C., Melville, NY, for Defendants, Empire State Regional Council of Carpenters, Local Union 52 of the Empire State Regional Council of Carpenters.

Jonathan D. Newman and Richard M. Resnick, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, DC, for Defendants, Building and Construction Trades Department.

John F. Burleigh and John J. Lynch, Jacobs deBrauwere LLP, for Defendants,

New York State Building and Construction Trades Council, Building and Construction Trades Council of Westchester and Putnam Counties New York, Building and Construction Trades Council of Nassau and Suffolk Counties.

## MEMORANDUM DECISION AND ORDER

COGAN, District Judge.

This breach of contract action under § 301 of the Labor Management Relations Act stems from a jurisdictional dispute between plaintiff, District Council No. 9 ("District 9"), and another labor union, Empire State Regional Council of Carpenters, as a result of conduct in which it and its affiliate, Local 52 (together, the "Carpenters"), have engaged. Plaintiff alleges that the Carpenters have competed for and taken business in violation of the constitutions and by-laws of umbrella labor associations that it alleges govern both unions. Plaintiff also asserts a breach of contract claim against those umbrella associations for failing to enforce their own governing provisions that allegedly require them to take action against the Carpenters.

The case is before the Court on defendants' motions to dismiss, which raise a number of points. The motions are granted because I find that the relevant documents do not authorize plaintiff to maintain this action.

## BACKGROUND

### I. Union Organization

The AFL–CIO has "departments," which are actually self-governing labor associations, to represent workers in specified trades and occupations. The department at the top of the associational pyramid in this case is defendant Building and Construction Trades Department

("BCTD"), which covers what its name implies. BCTD, in turn, includes among its members state and local labor organizations and unions, including the defendants New York State Building and Construction Trades Council (the "State Council"), the Building and Construction Trades Council of Westchester and Putnam Counties, New York (the "Westchester Council"), and the Building and Construction Trades Council of Nassau and Suffolk County (the "Long Island Council") (all three Councils will be collectively referred to as the "Councils.")

District 9 is a local union and affiliate of the International Union of Painters and Allied Trades ("IUPAT"). IUPAT is also a member of BCTD. The relationship of District 9 itself to BCTD and the Councils is not spelled out in the amended complaint or motion papers. However, at oral argument, District 9 explained that it is a direct member of each of the Councils, and this does not appear to be disputed.

District 9 also asserted at oral argument that it is a member of BCTD. BCTD disagrees. The issue turns on the construction of Article 1, § 2 of BCTD's Constitution. This defines BCTD's members as "National and International building and construction trades unions ... which are primarily and customarily, or historically, engaged or operating in the building and construction trades industry and all branches, division [sic] and subdivisions thereof." District 9 asserts that it is a "branch, division" or "subdivision" of IUPAT, and therefore a member of BCTD. BCTD's view, in contrast, is that this last clause modifies the phrase "construction trades industry," allowing member unions that are in branches, divisions and subdivisions of the construction trades industry to join, rather than referring to branches, divisions and subdivisions of national or international unions.

## II. Jurisdictional Disputes

Article X of BCTD's Constitution requires all member unions to submit to its jurisdiction to determine any dispute between members over which member organization will receive or has received a particular job. Article X of the Constitution mandates that:

> All jurisdictional disputes between or among affiliated National and International Unions and their affiliated Local Unions and employers shall be settled and adjusted according to the present plan established by the [BCTD], or any other plan or method of procedure that may be adopted in the future by the [BCTD] for the settlement of jurisdictional disputes. Said present plan or any other plan adopted in the future shall be recognized as final and binding upon the [BCTD] and upon all affiliated National or International Unions and their affiliated Local Unions.

The referenced dispute resolution mechanism is entitled the "Plan for the Settlement of Jurisdictional Disputes in the Construction Industry." Plaintiff refers to this as "the Plan," and I will as well. The substance of the Plan is not at issue here and indeed the parties have not advised me as to how it operates.

Article XII of BCTD's Constitution provides that it will promulgate a separate, uniform constitution which will govern all local councils, and that such constitution may be supplemented by the local councils as long as nothing in the supplement is inconsistent with BCTD's Constitution. Pursuant to this provision, BCTD has promulgated a "Constitution and Bylaws to Govern Local Councils of the Building and Trades Construction Department, AFL–CIO" (the "Uniform Constitution").

Article XII, § 5 of the Uniform Constitution requires member unions, in their collective bargaining agreements with em-

ployers, to include the same submission to the Plan as is required by Article X of BCTD's Constitution, quoted above. In other words, member unions are required to obtain employers' agreement to submit any jurisdictional dispute between unions to the BCTD for binding determination, rather than the employer taking sides. Specifically, § 5 provides:

> Local Councils and all Local Unions affiliated with the Council shall incorporate in all collective bargaining agreements without change the following provisions:
>
>> "All jurisdictional disputes between or among building and construction trades unions and employers shall be settled and adjusted according to the present plan established by the [BCTD] or any other plan or method of procedure that may be adopted in the future by the [BCTD]. Decisions rendered shall be final, binding and conclusive on the employers and unions."

The Long Island Council's Constitution and By-laws also have a provision on jurisdictional disputes that is similar to Article X of BCTD's Constitution. The State Council's Constitution and By-laws and Westchester Council's Constitution and By-laws do not. However, there seems to be no dispute that Article XII, § 5 of the Uniform Constitution applies to the State and Westchester Councils to achieve the same result.

Finally, it should be noted that on March 22, 2006, the State Council adopted a resolution stating that it would "remove and permanently disqualify from membership in the [State Council] and all local or regional Building Trades Councils within the State of New York any local union or district or regional council or other similar body that participates in, either directly or through direct affiliation, raiding of the jurisdiction of any signatory to this Resolution."

### III. Interpretation and Enforcement

BCTD's President is given broad discretion to interpret its Constitution. Article V, § 4 provides that "[t]he President shall have the authority to interpret the Constitution of the [BCTD]," and further provides that "the President's interpretation shall be conclusive and in full force and effect" unless it is amended.

BCTD's Constitution places the authority to discipline its member councils in both its President and its Governing Board of Presidents (made up of its President and the presidents of each member national and international union). As to the President, BCTD's Constitution provides as follows:

> The President is authorized to take such disciplinary action against local, state or provincial building and construction trades councils.... Such disciplinary action may be taken ... when such council ... violates or fails to comply with any of the provisions of [this] Constitution ... or engages in any activity or course of conduct which is contrary or detrimental to the welfare or bests interests of the [BCTD], or when such council fails to conform its policies to the policies of the [BCTD].

In addition, BCTD's Governing Board of President is "authorized and empowered to ... enforce the provisions contained in this Constitution."

The State Council has similar provisions in its Constitution and By-laws.

### IV. The Instant Case

The Carpenters cannot qualify for membership in BCTD or the Councils because their governing association, the United Brotherhood of Carpenters and Joiners of America (the "UBCJA"), withdrew from

the AFL–CIO in 2001. Under Article IX, Section 3 of the AFL–CIO Constitution, to enjoy representation in local councils, local unions must be part of national or international unions that are affiliated with the AFL–CIO. Although the AFL–CIO provided options by which UBCJA affiliates like the Carpenters could separately qualify for AFL–CIO membership after the UBCJA withdrew, the Carpenters availed themselves of none of those options.

Nevertheless, the crux of this case is the amended complaint's allegation that the Carpenters "remain affiliated" with the BCTD and the Councils and that these entities have "permitted full participation and benefits of membership in spite of the withdrawal of the Carpenters' parent organization. . . ." The amended complaint does not allege what the "full participation and benefits of membership" are, but plaintiff's counsel explained at oral argument that what is really at stake here, in major part, are "project labor agreements." These are project-specific agreements, like a contract to build a particular structure, in which the Councils enter into a collective bargaining agreement with an owner, developer, or contractor, and then select local unions to accomplish the various types of work needed for that project. District 9 contends that only locals in good standing can participate in these project labor agreements; the Councils dispute that.

District 9's complaint is thus that BCTD and the Councils are putting the Carpenters into those agreements instead of, or in addition to, District 9, when District 9 wants the work for itself. District 9 would presumably not have a problem if it could have jurisdictional disputes that arise from this situation resolved under the Plan, but the Carpenters are refusing to do so and BCTD and the Councils are not making them do so. Since the Carpenters, pursuant to the AFL–CIO Constitution, are not

even supposed to be an eligible member because their parent organization is not part of the AFL–CIO, District 9 resents losing work to them. It wants the Constitution and By-laws enforced to exclude the Carpenters, or alternatively, it wants the Carpenters to subscribe to the Plan in their collective bargaining agreements. District 9 alleges that it has repeatedly complained to BCTD and the Councils about this problem, but that either they took no action at all or did not take any dispositive action that was satisfactory to District 9.

The sixteen count amended complaint is a paradigm of confused pleading, containing much immaterial history about the severance of ties between the AFL–CIO and the UBCJA. The claims for relief are separately labeled as to each defendant and then multiple claims run together as to each defendant, except in one instance where two claims are labeled separately against one defendant, and another where the claims are labeled against two defendants and then run together. In essence, each of the defendants is alleged to have violated the constitutional provisions applicable to it by, in the case of the Carpenters, participating as a member without complying with the Plan, or, in the case of the other defendants, by not disciplining or expelling the Carpenters for violating the Plan or forcing the Carpenters to include the Plan in their collective bargaining agreements.

The amended complaint seeks various forms of relief, some of which is inconsistent and therefore must be viewed as alternative requests. First, plaintiff seeks a declaratory judgment that the Carpenters are not eligible to participate in the Councils. Second, plaintiff seeks an injunction forcing the Councils to expel the Carpenters and deny them the benefits of membership. Third, plaintiff seeks declaratory

relief that if the Carpenters are permitted to participate in the Councils, they must adhere to the Plan. Fourth, plaintiff seeks an injunction requiring the Councils and BCTD to act upon plaintiff's claims that the Carpenters are in violation of the constitutional documents. Fifth, plaintiff seeks reimbursement of all dues it has paid to the Councils and the elimination of any outstanding dues balance until the Carpenters are made to comply with the constitutional documents.

## DISCUSSION

### I. General Principles

#### A. Standard on a Motion to Dismiss

When deciding a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), the Court must "accept[ ] all factual allegations in the complaint as true and draw[ ] all reasonable inferences in the plaintiff ['s] favor." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir.2000). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). "The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (quotations and citation omitted); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). That is important here because the amended complaint's references to the various constitutional documents allow me to consider those documents on this motion to dismiss.

#### B. Governing Rules

The constitutional documents of labor unions, *i.e.*, their constitution and by-

laws, constitute a contract of Section 301(a) of the Labor Management Relations Act. *United Ass'n of Journeymen v. Local 334*, 452 U.S. 615, 619–22, 101 S.Ct. 2546, 2549–50, 69 L.Ed.2d 280 (1981). Those documents are subject to the generally applicable rules of contract interpretation under the common law, as modified by any overriding principles of federal labor law. *See Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Services Fund and Annuity Fund v. Lollo*, 35 F.3d 29, 34–35 (2d Cir.1994). One of those overriding principles is that courts must give considerable deference to a union's interpretation of it constitution and by-laws, which will control unless it is patently unreasonable. *See, e.g., Sim v. New York Mailers' Union Number 6*, 166 F.3d 465, 470 (2d Cir.1999) ("[T]he interpretation of bylaw provisions by Union officials will be upheld unless patently unreasonable.") (citations and internal quotations omitted). "Patently unreasonable" means an interpretation that "conflicts with the 'stark and unambiguous' language of the Constitution or reads out of the Constitution important provisions." *Executive Bd. of Transport Workers Union of Philadelphia, Local 234 v. Transport Workers Union of America, AFL–CIO*, 338 F.3d 166, 170 (3d Cir.2003) (citation and internal quotations omitted).

### II. Application

#### A. District 9's Rights against BCTD and the Carpenters under the BCTD Constitution and By-laws

The Carpenters and BCTD contend that even if the Carpenters are subject to the controlling constitutional provisions of BCTD and the Councils (which the Carpenters deny), it is up to those entities, not District 9, to enforce those provisions, and District 9 cannot proceed against them when the entities of which the Carpenters

are allegedly a member have not. For this and other points, the Carpenters rely on *United Derrickmen and Riggers Assoc. Local Union No. 197 v. Local No. 1 Bricklayers and Allied Craftsman,* 119 F.Supp.2d 168 (E.D.N.Y.2000), a case that does have a number of similarities to the instant dispute.

*Derrickmen* involved the Building and Construction Trades Council of Greater New York ("BCTC"), which was itself a council within BCTD. The dispute was between two BCTC locals, the plaintiff Local 197 and the defendant Local 1, and the issue, in part, was enforcement of the same or a similar Plan that is at issue in the instant case to resolve jurisdictional disputes. Local 197 sought to prevent Local 1 from raiding opportunities without submitting to the Plan and to compel it to include the Plan language in its collective bargaining agreements. On cross-motions for summary judgment, Judge Glasser dismissed the complaint for a number of reasons, including that Local 197 had no standing to enforce adherence to the Plan against another local. He reasoned that "[n]othing in the BCTD Constitution demonstrates an intent to confer an enforceable right to sue upon the thousands of local unions affiliated with the fifteen International and National Unions comprising the BCTD." *Id.* at 174.

In the instant case, I come to the same conclusion as Judge Glasser albeit through a slightly different process emanating from the different posture of and arguments made in this case. First, I reject District 9's argument that it is a member of BCTD under Article 1, § 2 of BCTD's Constitution. The phrase at the end of the sentence "and all branches, division [sic] and subdivisions thereof" is far removed from the subject "building and construction trades unions" earlier in the sentence, and indeed immediately follows the limiting phrase "building and construction trades

industry" without being separated by a comma. I see no reasonable reading of the sentence that would interpret "all branches, division [sic] and subdivisions thereof" as pertaining to "building and construction trades unions" instead of "building and construction trades industry." This is reinforced by the fact that while union organizations are commonly referred to as umbrella organizations, affiliates, members, councils, or locals, the sentence uses none of those nouns. Instead, it uses words conveying a broad, general description—"branches, division or subdivision thereof"—to define or expand the scope of the industry that BCTD covers. Finally, as noted above, BCTD's interpretation of its own constitutional documents is entitled to deference, and it does not interpret its Constitution to include District 9 as a member.

Since District 9 is not a member of BCTD, its only path to gaining enforceable rights is as an intended third party beneficiary of the BCTD Constitution. District 9 asserts that since it is bound by the BCTD Constitution, and derives both benefits and burdens from the implementation of the Plan, as well as other provisions of the Constitution, its status as intended third party beneficiary necessarily follows. For the same reasons as the Court in *Derrickmen,* 119 F.Supp.2d at 174–75, I reject this argument.

Under its plain language, the right to commence enforcement proceedings for obligations under the Constitution is vested in the national and international unions. They are the only entities in the Constitution that are authorized to file charges, and the exclusion of the locals from that grant of authority reflects a contractual intent to preclude locals from acting as the claimant or grievant in that process. Not only is the power to file charges limited to the national and international union mem-

bers of BCTD, but the only proper respondent for such charges is another national or international union, not one of those union's locals. The Constitution thus envisions enforcement just as it does membership—wholly between national or international Unions. Each such national or international is responsible both for protecting its own locals against business raiding by other national or internationals' locals, and for defending them if they are alleged to have engaged in such conduct.

For reasons not identified in its amended complaint, IUPTA, which is District 9's international governing organization and a member of BCTD, has chosen not to protect District 9 by asserting District 9's claims as stated in this action. The complaint, in fact, pointedly alleges that IUP-TA is not a party to this action, perhaps hinting, since the allegation is self-evident from the absence of IUPTA in the caption, that IUPTA wanted District 9 to make it clear that IUPTA was not involved. But District 9 cannot simply skip that contractually mandated requirement. Obtaining the support and cooperation of its own international union is a fundamental step it must take before it can obtain relief from BCTD. Having failed to do so, District 9 has no standing under the BCTD Constitution to proceed directly against either BCTD or the Carpenters.

### B. District 9's Claims against the Councils and the Carpenters

As noted above, although the amended complaint is silent on the issue, it appears common ground that District 9 is a member of each of the Councils. This removes the standing problem that District 9 has in proceeding against BCTD. However, District 9 still faces at least two equally insurmountable obstacles.

#### 1. The Claim against the Carpenters

As to the Carpenters, there is nothing in the Councils' constitutional documents that allows one local to sue another over a jurisdictional dispute. The mechanism is for District 9 to complain to the Councils about another member's conduct—here, allegedly, the Carpenters—and for the Councils to act on that complaint. I will address District's 9 claims against the Councils for failing to take action on its complaint below, but it suffices to note here that even District 9, by having requested relief from the Councils, recognizes that they are the proper forum in which to seek relief and to have the Plan enforced against renegade members.

District 9 attempts to avoid this result by pointing to basic principles of the law governing unincorporated associations, a group to which labor unions obviously belong. In particular, District 9 cites to a treatise on New York law for the proposition that "[t]he constitution, rules, and by-laws of an unincorporated association, if they are not immoral, contrary to public policy or the law of the land, or unreasonable, constitute a contract *between the members themselves, and between the association and the individual members,* which the courts will enforce." 6A N.Y.Jur.2d *Associations* § 6 (2007) (emphasis added). This statement of the law is obviously accurate. It is essentially the same principle from which the federal rule requiring interpretation of union constitutional documents as contracts, *see United Ass'n of Journeymen v. Local 334,* 452 U.S. 615, 619–22, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), is derived.

However, by isolating the phrase "between the members themselves," District 9 reads too much into this principle. The principle is one of interpretative approach, not substantive law. It does not vest rights in parties beyond those granted by the language of the agreement. To view the rule as creating a substantive right to enforce the agreement against fellow members would subsume the rule itself,

transforming what is supposed to be a rule adopting principles of contract interpretation into one that creates a super-contract. This is because District 9's approach would transcend the very language that is meant to be enforced and violate those same principles of contract interpretation. Thus, if an associational agreement grants one member the right to sue another, a court will recognize that provision as a substantive right under the agreement and enforce it as it would any contractual right. But if no such right is granted, and no principle of contract law supplies it, this rule of interpretation standing alone will not permit the courts to infer such a right where the parties have not agreed to it.

Here, nothing in the Councils' constitutional documents gives one member the right to sue another. No duty is set out that is enforceable directly between them. Thus, even if the Carpenters are assumed to be a member of the Councils, District 9 has no right to proceed against them.

### 2. The Claim against the Councils

█ District 9's claim against the Councils faces a different but more fundamental problem. Under the governing language, the Councils, and particularly their officers and committees charged with enforcing their constitutions and by-laws, have complete discretion as to whether to bring disciplinary proceedings against any member. Nothing requires them to do so. Because, under the controlling language, their discretion is so unencumbered, locals who join these Councils accept the risk, not only that the Council will reject their request to discipline another member, but that the Council will refuse to consider the request at all.

█ To understand why this is the case, one needs to look at the remedy that District 9 is seeking. This kind of relief, compelling an unincorporated association to act according to its constitutional documents, is the equitable counterpart against private entities that the legal remedy of mandamus supplies against public entities. It is well established that corporations, as creations of the state, are subject to a writ of mandamus to compel them to act according to their articles of incorporation and by-laws, *see* 5A Fletcher Cyc. Corp. § 2366 (2007), just as mandamus can be used to compel public officials to perform their statutory duties. Although unincorporated associations like labor unions are not created by the state and thus are not subject to mandamus on the law side of the court, *Phalen v. Theatrical Protective Union No. 1*, 22 N.Y.2d 34, 290 N.Y.S.2d 881, 238 N.E.2d 295 (1968), federal and state courts have long recognized that the remedy on the equity side of specific performance, requiring a private actor to conform to its contractual obligations to prevent irreparable injury, is closely analogous to a writ of mandamus. *See In Re Tyler*, 149 U.S. 164, 190, 13 S.Ct. 785, 37 L.Ed. 689 (1893) (comparing "an injunction to prevent such wrong and injury" to "a mandamus, in a like case, to enforce the performance of a plain legal duty, purely ministerial"); *Antoni v. Greenhow*, 107 U.S. 769, 781, 2 S.Ct. 91, 27 L.Ed. 468 (1883) ("*Mandamus*, in this class of cases, is in the nature of a suit to obtain a specific performance of a contract") (emphasis in original); *Parsons v. Marye*, 23 F. 113, 121 (C.C.E.D.Va.1885) ("a mandatory injunction ... is the counterpart in equity of a mandamus at law."); *Phalen*, 22 N.Y.2d at 40, 290 N.Y.S.2d at 885–86, 238 N.E.2d 295 ("unincorporated labor unions are not the sort of bodies against whom mandamus traditionally lies ... [but] the very same relief could be obtained in an ordinary action in equity for a mandatory injunction").

█ Of course, it is an equally venerable principle that mandamus will only lie to require performance of a purely ministerial act; when the statutory or corporate provision sought to be enforced is discre-

tionary, mandamus is not available. *See Burrell v. U.S.*, 467 F.3d 160, 164 (2d Cir.2006), citing *Work v. United States ex rel. Rives,* 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561 (1925) ("Mandamus issues to compel an officer to perform a purely ministerial duty. It cannot be used to compel or control a duty in the discharge of which by law he is given discretion."); *Brasseur v. Speranza,* 21 A.D.3d 297, 297–98, 800 N.Y.S.2d 669, 670 (1st Dep't 2005) (where by-laws required corporation to "maintain the common elements of the condominium," mandamus was unavailable because "the obligation sought to be enforced ... involves more than a mere ministerial act.").

Since the mandamus remedy at law to compel a corporation to comply with its charter and by-laws is analogous to a injunction against an unincorporated association to comply with its constitution and by-laws, it logically follows that discretion in the enforcement of its constitutional provisions on the part of the unincorporated association will render the equitable remedy unavailable. Indeed, even in an action at law for damages, where the higher standard of irreparable injury does not apply, the presence of discretion in exercising constitutional provisions precludes a finding of duty between the association and its members to take any particular steps.

*Brenner v. Local 514, United Brotherhoood of Carpenters and Joiners of America,* 927 F.2d 1283 (3d Cir.1991), illustrates this point. There, individual members of a local sued their local and the UBCJA, which was the local's governing association, alleging as against UBCJA that it had failed to adequately supervise the local and prevent its illegal retaliation against the plaintiffs for opposing the local's management. The plaintiffs relied on § 6 of UBCJA's constitution, which provided that the UBCJA

"shall have the right to establish supervision over and to conduct the affairs of any subordinate body (including the removal of any or all officers of such subordinate body) to correct financial irregularities or to assure the performance of collective bargaining agreements and the responsibility of the subordinate body as a bargaining agent or to protect the interests and rights of the members or whenever the affairs of the subordinate body are conducted in such manner as to be detrimental to the welfare of the members and to the best interests" of the UBCJA.

*Id.* at 1291. The Third Circuit rejected the contention that this provision mandated any action on the part of the UBCJA:

Assuming that section 6 of the constitution gave the International the right to intervene to require the local fairly to refer union members from the hiring hall, we see nothing in section 6 which can be construed as an obligation undertaken by the International to do so. The retention of regulatory and supervisory powers by the International in Section 6 merely gave it a discretionary right, as distinguished from a duty, to intervene in the affairs of Local 514.

*Id.* at 1292.

That is the case here. The constitutional provisions upon which District 9 relies do not require the Councils to do anything.[1] They are grants of authority, not a list of mandated actions that the Councils must take. District 9 therefore has no right to injunctive relief compelling the Councils to exercise their discretion neither in the way that District 9 would like, nor in any way at all.

District 9's various attempts to transform the permissive into the mandatory are not persuasive. First, it notes that there is a right to administratively appeal

---

1. The same is true as to District 9's claims    against BCTD under its Constitution.

adverse determinations of claims to BCTD. This means, according to District 9, that the Councils must determine grievances. But its logic is flawed; it places the cart before the horse. Simply because the Councils provide for a right of appeal of a decision, should they choose to make it, does not in any way mean that they must make it. The right of appeal if an adverse decision is made does not alter the permissive grant of authority to make decisions that is plainly set forth in the constitutional documents.

Second, District 9 points to a distinction between the State and local Councils' constitutions—the former contains the discretionary grants of authority to discipline, while the latter does not contain any language on the issue at all. Yet as District 9 conceded at oral argument, this is simply because the local Councils' constitutional documents defer to BCTD. Article 8 of the Westchester Council's Constitution and By-laws states that "this Council shall not suspend or expel any affiliated Local Union without first obtaining approval of the Governing Board or Presidents" of BCTD, and the Long Island Council's Constitution and By-laws contains nearly identical language. Thus, District 9 has stumbled into an even bigger problem as to the local Councils—they are constitutionally prohibited from providing at least some of the relief that District 9 has requested, and upon which request District 9 contends that the Councils are required to act.

Third, District 9 argues that the failure to act violates a memorandum written by the President of the AFL–CIO and a State Council resolution mandating the removal of the Carpenters that were by their terms mandatory. Specifically, it relies upon a memorandum from the AFL–CIO's President in 2005 stating that Carpenters affili-

ates who did not accept the re-affiliation option "must" be expelled from all AFL–CIO affiliates, and the State Council's 2006 resolution advising that it "will remove and permanently disqualify" any affiliate that raids. District 9, however, cites no authority for the proposition that officers' memoranda or associational resolutions enjoy the same status as the association's constitution and by-laws. It would be a dangerous adventure to infuse isolated or ad-hoc statements, not approved with the regularity of constitutional provisions or by-laws, and particularly from a single association officer, with the binding effect of contractual undertakings.[2]

Finally, District 9 argues that at the very least, the issue of whether action is mandatory or permissive is ambiguous under the applicable documents, and thus discovery and trial are needed to interpret the parties' intent. I do not see the ambiguity; the constitutional documents plainly compel no action. But even if there were such ambiguity, this type of case presents an instance where federal labor policy supersedes the common law rules of contract interpretation. It is not only that federal courts defer to a union's interpretation of its own constitutional documents, *see Sim v. New York Mailers' Union Number 6*, 166 F.3d 465, 470 (2d Cir.1999); it is the policy recognizing that affairs within and between unions are most often best resolved between those parties themselves without judicial interference. *See Local No. 48, United Broth. of Carpenters and Joiners of America v. United Broth. of Carpenters and Joiners of America*, 920 F.2d 1047, 1051 (1st Cir.1990) ("Courts have neither a monopoly on fairness nor a sufficient expertise in the administration of labor organizations to warrant pervasive judicial intervention in union affairs.")

---

**2.** Even if one were to take that casual step towards contract formation, District 9 would still have its standing problem as to BCTD.

(quoting *Gurton v. Arons,* 339 F.2d 371, 375 (2d Cir.1964)) ("General supervision of unions by the courts would not contribute to the betterment of the unions or their members or to the cause of labor-management relations"); *Bennett v. Saunders,* No. 99 Civ. 0854, 1999 WL 529539, *2 (S.D.N.Y. July 23, 1999) ("The Second Circuit has repeatedly emphasized this policy of non-interference in the context of labor union disputes.")

Accordingly, District 9 has no right to maintain this action under the constitutional documents.

## CONCLUSION

Defendants have raised a number of other grounds for dismissal but there is no need to address them in light of the discussion above. The motions to dismiss are granted, and the amended complaint is dismissed.

**SO ORDERED.**